(Superior Court of Cincinnati—Speical Term.)

## GEORGE A. HOBSON v. THE QUEEN INSURANCE COMPANY.

*Fire Insurance—Failure to receive exceptions to proof of loss sent by mail—Right of the Company to an appraisement—Where the company seizes and carries off the property remaining after the fire, the insured is not compelled to furnish proof of loss or submit to an appraisement.*

(Decided July, 1893.)

SMITH, J.

The plaintiff had insurance policies for two thousand dollars each in two insurance companies (of which the defendant was one) upon his household goods in his dwelling house, on McGregor street, in the city of Cincinnati.

On the eighth day of November, 1892, his dwelling house caught fire and the goods insured were either destroyed or damaged by fire.

The insurance company refusing to pay the amount of the policies, plaintiff brought suit to recover the amount of the same.

The case against the company other than the defendant was tried last term before a jury, and resulted in a verdict for plaintiff; and this case was submitted to me without the intervention of a jury.

The petition set out the fact of insurance in the defendant company, the destruction and damage of the property covered by the insurance to a greater amount than the value of the policy, the compliance of plaintiff with the conditions of the policy, his demand upon defendant for the amount due him thereunder, and the refusal of the defendant to pay the same.

The answer of the defendant sets up practically two defenses: First, that the plaintiff failed to furnish a proof of loss as required by the policy; second, that he refused to submit the question of the amount of the loss to the appraisers, as required by the policy.

The case as presented by the testimony raises no question as to the value of the property destroyed, and therefore concedes that the amount destroyed is in excess of the amount of the policy. The defense, therefore, is clearly a technical one, and while the defendant is entitled to make the same, yet a court would not under such circumstances feel warranted in liberally construing the terms of the policy in order to sustain it.

It is admitted that the plaintiff did furnish to the defendant company a few days after the fire a proof of loss which the plaintiff supposed to be in full compliance with the requirements of the policy. The defendant, however, contends that it excepted to the proof of loss so furnished, and that it notified the plaintiff of such exceptions, but that the plaintiff failed to file any amended proofs of loss to correct the defects of which the defendant complained.

The only evidence of the defendant that it notified the plaintiff of its exceptions to the proof of loss, is the testimony of one of its employes, that he put such exceptions in the mail. There is no testimony that these exceptions ever reached the plaintiff, except the presumption which ordinarily arises, that matter put in the mail reaches the destination for which it is intended.

Upon the other hand, the plaintiff testifies under oath that he never received this notice of the exceptions or any other notice, and that he had no knowledge or notice of any kind that the proof of loss furnished by him was not acceptable to the defendant. He also testifies that he frequently met the agent of the company after the proof of loss was filed

with the company, and that the agent never said anything to him about the objections to the proof of loss. This is not denied by the agent.

Under these circumstances, taking into consideration the fact that while ordinarily mail matter is regularly delivered at the destination for which it is intended, yet that it does frequently happen that it miscarries, I am disposed to think that the oath of plaintiff is sufficient to overcome the presumption that the notice reached him.

The contention of the defendant is weakened, too, by defendant's failure to put in any evidence of the postal authorities that the mail upon that day was regularly delivered, by its omission to call the carrier who delivers mail to the plaintiff, and by the fact that the attorney of plaintiff testifies under oath that the agent of the company informed him that the proof of loss had been received and was satisfactory to the company, although it is true the agent denies the truth of the statement of the attorney.

I think, therefore, that under the evidence the plaintiff is entitled to a finding of fact that he did furnish a proof of loss to the defendant, to which it took no exceptions, and that his suit having been begun sixty days after the proof of loss was furnished, that he was entitled to maintain his action.

In thus disposing of the question of the defense as to the proof of loss, I have not deemed it necessary to consider the evidence of the defendant's own agent, by whose testimony it appears that upon the application of the plaintiff to him for a form of proof of loss such as the company requires, the agent, although in possession of a large number of them refused to give one to him; and therefore I have not felt called upon to express an opinion as to whether, under those cicrumstances, the defendant would be estopped to set up the informality of any proof of loss furnished by the plaintiff.

As to the second defense, with reference to the refusal of the plaintiff to join with the defendant in the appointment of appraisers, the evidence in the case shows beyond dispute that immediately upon the burning of the property the plaintiff called upon the insurance company to press for a settlement of his claim, even suggesting that appraisers be appointed to determine the amount of the loss, and that the agent of the company continually insisted that the matter could be adjusted by themselves, and that it was not until the sixteenth day of January that a demand was made by the company for an appraisement, although the proof of loss had been filed with it on March 18.

It is contended by counsel for plaintiff that this action on the part of the agent of the company was a waiver of any right to subsequently insist upon the appointment of appraisers. But I express no opinion upon this question. It seems to me, however, that for other reasons the defendant has forfeited its right to have the amount of the policy fixed by appraisers.

The purpose of an appraisement is two-fold: First, to determine the amount of loss in a prompt and inexpensive manner, by avoiding a judicial inquiry as to the same; and, second, to enable the company to exercise the right, if it so desires, to take the property at its appraised value, as is provided by the policy. But it is evident from the testimony that the defendant can not claim that it has been deprived of either of these rights: First, because no controversy is made here as to the amount of the loss. There is no dispute here but that the loss was greater than the amount of the policy. And, second, if it was desired to exercise the right to take the property at its appraised value, the policy required that notice should be given within thirty days from receipt of the proof of loss, which notice the defendant company failed to give.

As the defendant company, therefore, has not, in contemplation of the law, been deprived of the advantages which an appraisement would have given it, it can not, it seems to me, by the bare assertion of a claim for appraisement, defeat the right of plaintiff to recover.

But there is another ground which it seems to me precludes the defendant from claiming either defects as to the proof of loss or refusal of the plaintiff to appraise. This lies in the fact that by the action of its agent after the fire in taking the goods out of the possession and control of the plaintiff without his consent, it forfeited its right to claim from the plaintiff any proof as to his loss, or to ask him to submit to any appraisement of the same. The testimony with respect to this subject is that upon the morning immediately ssucceeding the fire the agent of the defendant company came to the premises of the plaintiff and insisted, without his consent upon carrying off the property and storing it at his own expense, and assuming complete and absolute possession and control of it, and that the plaintiff never regained possession and control of it until he replevined it from the defendant after this action was begun.

By reference to the policy it will appear very clearly that the policy contemplates that the property shall remain in the possession and control of the insured, because it requires him to assort it and make an inventory of it, and further provides that if he removes it there shall be a forfeiture as to the insurance.

But if the insurance company removes it, and thus deprives him of the opportunity to make out a proper proof of loss or to determine what his loss is, it seems to me that it can not be heard to afterwards complain that he has not filed a proof of loss, or that he refused to submit the question of loss to the judgment of appraisers. If the defendant insisted upon the filing of proof of loss, or upon submitting the question of loss to appraisers, it was the duty of the company to have restored the property to the possession and control of the plaintiff, where, under the terms of the policy, it should have been.

Other grounds of recovery than the ones I have considered have been urged by counsel for plaintiff, but it has not seemed to me, for the reasons above stated, that it was necessary to consider them.

In my opinion, the plaintiff is entitled to the full amount claimed.

Shay & Cogan, for plaintiff; Thos. A. Logan, contra.